the amount of damages in the defendant's counterclaim. This they did, and made their award solely on the number of other machines which the plaintiff failed to take and pay for. We think their verdict was correct, and that the court committed no error in the rule of damages charged.

The motion for a new trial is therefore denied.

So ordered.

(161 App. Div. 322)

### PEOPLE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department. March 13, 1914.)

1. WOODS AND FORESTS (§ 8*)—FIRES—FOREST PRESERVES—MEASURE OF DAMAGES.

Under Const. art. 7, § 7, providing that lands constituting the forest preserve shall be forever kept as wild forest lands, the measure of damages against a railroad company for burning trees on portion thereof is the difference in value between the land with the growing forest and the land as the foundation for a new forest, which must be planted in order to maintain the tract for the purpose for which it was set apart.

[Ed. Note.—For other cases, see Woods and Forests, Dec. Dig. § 8.*]

2. CONSTITUTIONAL LAW (§ 246*)—FOREST PRESERVE—DESTRUCTION—EQUAL PROTECTION OF THE LAW.

Making the measure of damages for the burning of the trees on portions of a forest preserve the difference in value between the land with the growing forest and the land as the foundation for a new forest does not deny the equal protection of the laws.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 702, 709; Dec. Dig. § 246.*]

3. CONSTITUTIONAL LAW (§ 302*)—FOREST PRESERVE—DESTRUCTION—DUE PROCESS OF LAW.

Making the measure of damages for the burning of the trees on portions of the forest preserve the difference in value between the land with the growing forest and the land as the foundation for a new forest does not deny due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 851–856; Dec. Dig. § 302.*]

4. WOODS AND FORESTS (§ 8*)—FOREST PRESERVE—TIMBER.

The standing timber included in a forest preserve is not property in and of itself.

[Ed. Note.—For other cases, see Woods and Forests, Dec. Dig. § 8.*]

Smith, P. J., and Howard, J., dissenting.

Appeal from Trial Term, Franklin County.

Action by the People of the State of New York against the New York Central & Hudson River Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

McClary & Allen, of Malone (Martin E. McClary, of Malone, of counsel), for appellant.

Thomas Carmody, Atty. Gen. (John T. Norton, of Troy, of counsel), for the People.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WOODWARD, J.  The complaint in this action, supplemented by the bill of particulars, alleges in substance that on or about July 11, 1908, a fire was started on the north side of defendant's right of way, at about between telegraph poles 125—05 and 125—19, on lot 21, township 20, great tract 1 of Malcomb's purchase, town of Santa Clara, Franklin county, N. Y., and about 3 to 3½ miles westerly of Saranac Inn Station, and that another fire started on or about October 16, 1908, on the north side of said right of way, and about 2½ miles westerly of Saranac Inn Station; that said fires were negligently caused by the operation of defendant's railroad, and negligently allowed to spread upon the adjacent lands of the plaintiff; that the fire of July 11th burned over about 39.18 acres, and the fire of October 16th about 461.83 acres, of plaintiff's lands, causing damages in the sum of $27,000.  The answer denies negligence in the starting of the fires or the spreading of the same, and denies all liability for the damages claimed by the plaintiff.

Upon the trial of the action the learned court took from the jury all question as to the negligence of the defendant in reference to the construction and maintenance of its engines, and confined the issue of negligence to the question whether the fires originated upon the defendant's right of way, and whether the defendant was negligent in permitting the fires to spread to the lands of the plaintiff.  While the evidence was not as clear as might be desired in actions of this character, we are satisfied that it was such as to call for a submission of the defendant's negligence to the jury, and that there is sufficient evidence to support the verdict.

[1] The defendant urges, however, that, if there is sufficient evidence to support a finding of negligence on the part of the railroad company, the judgment should be reversed because of an alleged erroneous measure of damages permitted by the learned trial justice.  It is conceded that the court properly charged the jury that:

"The rule of damage in a case of this character is this: That witnesses may be allowed to testify as to the value of the property before and after the burning.  The difference between the two is the damage."

But it is urged that the court, in various rulings, by refusing to admit testimony as to the value of the timber left after the burning, erred to the detriment of the defendant.

The property involved in the fire is a part of the forest preserve, and the court held that, under the provisions of section 7 of article 7 of the state Constitution, the timber remaining after the fire could not be removed as salvage, and that the defendant was not entitled to any evidence showing the value of such timber for the purpose of reducing its liability.  This question was presented in various aspects, and each time with an exception to the defendant, so that the matter is squarely up for determination; but we are of the opinion that it is not a ground for the overturning of the judgment in this action, for the reason that it is based upon a misapprehension of the basis of the damages to the plaintiff.  The defendant says that the damage is to timber; that the plaintiff's method consisted of counting and measuring the trees that had been killed upon the property; then stating a

hypothetical question to their expert witnesses, and asking them to testify what the property was worth before the fire, with the timber alive and standing, and then what it was worth after the fire, with the timber killed. The defendant, upon its theory that it was entitled to salvage out of the killed timber remaining, took men of experience in that line of work and went over the property, estimating the value of the property with the timber alive and growing, and then the value after the fire, with the killed timber considered valueless, and also making allowances for the value of the killed timber after the fire, and it was claimed that this was the true measure of damages.

As above suggested, the difficulty with the defendant's position is that it misapprehends the foundation of the damages. The damage is not to timber but to the estate. The public policy of the state, the necessity for recreation grounds, for adequate supplies of pure and wholesome water, have combined to give to timber lands in certain portions of the state a value entirely independent of the market value of the timber on such lands. The value is found, not in the timber as such nor in the land as land, but in the combination of land and forest, conserving the water supply and preserving the game and the opportunities for recreation, and this forest preserve has a market value just because it is forest, because of the number of trees, their kind, their age, their healthfulness, etc., in conjunction with the land, and not because of any particular price that the trees would bring if taken to a sawmill. Indeed it is because of this peculiar value that the state has annually appropriated large sums of money for the purchase of these lands, so that the forest could be preserved as against the selfish interests of individual owners who were denuding the land to the detriment of the general welfare of the state, and which has resulted in a constitutional provision which says:

"The lands of the state, now owned or hereafter acquired, constituting the forest preserve as now fixed by law, shall be forever kept as wild forest lands. They shall not be leased, sold, or exchanged, or be taken by any corporation, public or private, nor shall the timber thereon be sold, removed, or destroyed." Article 7, § 7.

It is not the land nor the trees, as such, that have the value; it is the "wild forest lands" which have the value to the state. These trees are taken out of the market as timber entirely; they are not to be "sold, removed, or destroyed," and for this reason the defendant is not entitled to any salvage. It has destroyed some portion of the plaintiff's "wild forest land" because it has killed the trees which made it such forest land, and these trees, as timber, having been wholly withdrawn from the market, the defendant is bound to pay the damage, not to the timber, but to the "wild forest land," and that damage is the difference in the value to the plaintiff between the land with the growing forest and the land as the foundation for a new forest, which must be planted in order to maintain the tract for the purpose for which it was set apart by the people of this state.

[2] This construction of our state Constitution does not violate any of the provisions of the fourteenth amendment to the federal Constitution; it is not denying to the defendant the equal protection

of the laws, for it is merely holding it to the same responsibility to which any other individual or corporation would be held where he or it had been guilty of a trespass upon the forest preserve.

[3] It is not denying due process of law, for it is only taking from the defendant the damage which the state has sustained to its "wild forest lands" by reason of the trespass, which is an entirely different kind of damage from that which would result to an individual owner whose interests did not extent beyond his own homestead.   He could make use of the timber, could get the market price for it as burned timber, while his lands, for private purposes of agriculture, might be worth as much or more than for supporting the growth of timber, but in the case of the state, which is fostering its forests, the loss is irreparable.

[4] The timber is not property in and of itself, for the law has withdrawn it from the market to serve another and higher purpose, and one which might be largely defeated if the burned timber was permitted to be made use of, for it would offer inducements to forest fires in the preserve region, and the defendant has no ground for complaint if it operates its railroad under the same conditions that would apply to any other corporation or individual in the same locality under like circumstances.   The defendant could not lawfully buy this timber; it could not take it under its general power of eminent domain for the purposes of its railroad; it is not property to be disposed of, but finds its peculiar value in the fact that it helps to constitute the "wild forest lands" of the state; and the true measure of damage is not the land and the trees as agricultural land and timber, the timber being estimated at its growing value before and its burned value after the fire, but is the value of the entity known as "wild forest lands" before the burning and after it, and this is what the land is worth for "wild forest lands" with the wild forest killed, and only to be replaced by time and the expenditure of money.   Neither the land nor the timber can be put to any other use; in contemplation of law it has no existence as property except for the limited purpose to which it is dedicated; and, if individuals or corporations will commit trespasses upon this sacred preserve, they must expect to compensate the state of New York for this peculiar value, without diminution for salvage from the timber which, in the law as it now stands, is not timber but an ingredient of the "wild forest lands," which it is the policy of the state to preserve in the higher interests of the defendant and others within the state.

The judgment and order appealed from should be affirmed, with costs.   All concur, except HOWARD, J., dissenting in an opinion in which SMITH, P. J., concurs.

HOWARD, J. (dissenting).   No fixed rule for measuring the damage done by fire to the "wild forest lands" of the state has ever been adopted.   In the absence of any recognized measure of damages in such cases, the plaintiff in this case undertook to prove its damages by the rule applicable between private individuals.   In view of the ownership of these lands, the uses to which they are put, and the constitutional prohibitions concerning them, their value can only be fixed by an arbitrary standard.   No natural standard (that is, no market stand-

ard) can be employed. The value of these forest preserve lands is entirely a matter of opinion, not of computation. How much they are worth for the purpose of conserving the water supply, how much they are worth as a rendezvous for consumptives, as a haunt for wild animals, as a Mecca for hunters, as a wilderness for recreation, must necessarily depend upon the different tastes and views of those whose opinions are sought. There would be such a wide fluctuation in these views and tastes as to render opinions on the subject wholly impracticable in measuring damages. Therefore, in fixing the value of these lands, in case of damage by fire, the courts must hit upon and establish some arbitrary rule. The rule in this case (that is, the rule employed when private parties come into court) is, in my judgment, as accurate and fair as any rule which can be thought of, provided that it is correctly applied and allowed to operate in all directions as it would operate between individuals. But in this case, as I view it, the rule was incorrectly and most unfairly applied.

When the state comes into court as a litigant, it is entitled to no more than a private suitor, to no different measure of damages. People v. Stephens, 71 N. Y. 527. But in this case it got more than a private suitor, and the defendant labored at a disadvantage in having the state as an opponent. The state attempted to prove the damages by swearing witnesses as to the value of the property before, and then as to its value after, the fire; the difference being the damages. The defendant by cross-examination and otherwise attempted to show that much of the burned timber could have been cut off and sold and the damages greatly lessened in this manner. This evidence was rejected on the theory that section 7 of article 7 of the Constitution forbids the removal or sale of these dead trees. Of course, between private litigants this evidence would have been entirely competent, because the Constitution would not have been in the way. And it was competent here for the reason that a rule, inapplicable to the circumstances and arbitrarily applied, was being employed.

The Constitution surely prohibits the sale of live timber, and yet in each question of the plaintiff it was assumed that the live timber could be sold. This assumption was proper because the ordinary rule of damages would have been unworkable without this assumption; but it was a lopsided application of the rule, amounting to its complete subversion, to assume that the live timber could be sold in violation of the Constitution, and that the dead timber could not be sold. This was the employment of that part of the rule which favored the state; a rejection of that part which favored the defendant. This distortion of the rule worked great harm to the defendant. It was an invocation of the Constitution to the profit of the state and to the detriment of the defendant. It denied to the defendant the "equal protection of the laws." The measure of damages employed was manifestly improperly employed. The error worked great havoc to the rights of the defendant. It was wholly unreasonable, wholly unfair. The judgment should be revoked.

SMITH, P. J., concurs.